# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| **WALTER XAVIER FLOWERS,** BOP Reg. # 70094-019, Movant, v. UNITED STATES, Respondent. | **CRIMINAL ACTION NO.** 2:16-CR-2-RWS-JCF-13 **CIVIL ACTION NO.** 2:18-CV-173-RWS-JCF **MOTION TO VACATE** 28 U.S.C. § 2255 |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Movant, a federal prisoner, has filed a 28 U.S.C. § 2255 motion to vacate the consecutive 60-month sentence he received on September 21, 2017, after the entry of his guilty plea in this Court, for violating 18 U.S.C. § 924(c) by possessing a firearm during a drug trafficking crime. (Doc. 407; *see* Doc. 393). Movant does not challenge his 16-month sentence for the drug trafficking crime itself, conspiracy to possess with intent to distribute methamphetamine. (Doc. 407).

## I.  Background

The government provides the following factual background, gleaned from Movant's Pre-Sentence Report ("PSR"), to which Movant did not object:

> On February 11, 2016, MANS [Multi Agency Narcotics Squad] agents received information from an informant that defendant would be at a certain location to sell methamphetamine and that he would be driving a particular vehicle. (PSR ¶ 34). Agents responded to the location and

observed defendant's vehicle arrive. (Id.). They walked up to the car and saw a bag of methamphetamine sitting on the seat. (Id.). Defendant was arrested and his vehicle was searched. (PSR ¶¶ 34-35). In the vehicle the agents located 1.3 ounces of methamphetamine in a plastic bag on the seat, four ounces of methamphetamine in a tupperware container under the driver's seat, a Glock 19, 9 mm caliber handgun, and a Glock 21, 45 caliber handgun. Defendant admitted possessing the drugs and firearms in his vehicle. (PSR ¶ 37).

Defendant also admitted that he had more methamphetamine at his house. (Id.). Defendant gave consent to search his residence. (Id.). During the search the agents found about nine ounces of methamphetamine in a bowl in the kitchen, about seven ounces of methamphetamine in another location, an Iver Johnson, .32 caliber pistol, a Stevens Model 200, .270 caliber rifle with scope, a Hi-Point Firearms Model 995, 9 mm rifle, and a Savage Arms, 12 gauge shotgun. (PSR ¶¶ 37-38).

Defendant admitted that he had been involved in a conspiracy to possess with intent to distribute and to distribute methamphetamine with others named in the superseding indictment. (PSR ¶¶ 40-41).

(Doc. 417 at 2-3 (footnote omitted)).

At his plea hearing, Movant acknowledged the following:

1. he understood the rights he was waiving by pleading guilty (Doc. 424 at 6-8);

2. neither any promise, other than those contained in his plea agreement, nor any threat had induced Movant to plead guilty (*id.* at 13);

3. he understood what the government would have to prove to convict him of the charges against him, including that to convict him of the firearm charge the government "would have to establish that the defendant committed the drug trafficking crime . . .; secondly, that during the commission of the offense the defendant used or carried or possessed a firearm; and third, the defendant used the firearm in relation to, or possessed it in furtherance of the drug trafficking

2

crime" (*id.* at 14);

4. the government's recitation of the facts underlying Movant's charges, as set forth in the PSR and summarized above, were accurate (*id.* at 15-18);

5. he had committed the crimes charged against him, which included his admission "that [he] had the methamphetamine . . . [and] the gun[s, which he possessed] in connection with the distribution of drugs" (*id.* at 18);

6. he understood the potential penalties for his crimes, including a minimum consecutive five-year sentence for the firearm offense (*id.* at 19-20);

7. he understood the effects of the appeal waiver contained in his plea agreement[1] (*id.* at 20-22); and

8. he was satisfied with his counsel's performance (*id.* at 23).

The Court accepted Movant's plea:

I do find [Movant] understands the charges, that he understands the consequences of his plea of guilty. I've observed him and he does not appear to be under the influence of any substances that might affect his

---

[1] LIMITED WAIVER OF APPEAL: To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that the Defendant may file a direct appeal of an upward departure or upward variance above the sentencing guideline range as calculated by the district court. Claims that Defendant's counsel rendered constitutionally ineffective assistance are excepted from this waiver. The Defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government initiates a direct appeal of the sentence imposed, the Defendant may file a cross-appeal of that same sentence.

(Doc. 303-1 at 15-16).

> judgment. I find the plea has a factual basis and is free of any coercive influence of any kind. I find there have been no promises made to [Movant] except those set out in the plea agreement and therefore find that the plea is freely and voluntarily made.

(*Id.* at 24-25). Neither the government nor Movant filed an appeal.

## II. Discussion

### A. Standards of Review

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). But it is well-settled that "to obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).

The Supreme Court set forth the standard for evaluating claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984); *see Dell v. United States*, 710 F.3d 1267, 1272 (11th Cir. 2013) (applying *Strickland* standard of review to ineffective-assistance-of-counsel claim raised in § 2255 motion). "An ineffectiveness claim . . . is an attack on the fundamental fairness of the proceeding whose result is challenged." *Strickland*, 466 U.S. at 697. The analysis involves two

components, but a court need not address both if the petitioner "makes an insufficient showing on one." *Id.*

First, a federal court determines "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. The court "must be highly deferential" in scrutinizing counsel's performance and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In other words, the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (Internal quotations omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (*en banc*). Second, a federal court determines whether counsel's challenged acts or omissions prejudiced the petitioner, i.e., whether "there is a reasonable probability" — one "sufficient to undermine confidence in the outcome" — that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

> To prevail on a claim of ineffective assistance, a defendant must establish two things: (1) "counsel's performance was deficient," meaning it "fell below an objective standard of reasonableness," and

5

> (2) "the deficient performance prejudiced the defense." *Strickland*[], 466 U.S. [at] 687-88 []. To satisfy the deficient-performance prong, the defendant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* at 687. The defendant must rebut the strong presumption that his counsel's conduct fell within the range of reasonable professional assistance. *Id.* at 689.

*Connolly v. United States*, 568 Fed. Appx. 770, 770-71 (11th Cir. 2014).

### B. Movant's Claims

In his § 2255 motion — which is "founded on" the Supreme Court's decisions in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), and *Johnson v. United States*, 135 S. Ct. 2551 (2015) (Doc. 407 at 11, 13) — Movant raises four claims:

1. ineffective assistance of counsel for (a) failing to explain to Movant that he could plead guilty to the drug trafficking charge and take the firearm charge to trial, which Movant claims violated his Fifth Amendment due process and double jeopardy rights; (b) allowing his sentences to run consecutively; and (c) failing to "preserve key factors for appeal";

2. ineffective assistance of counsel for (d) failing to inform Movant of the nature of the charges against him and the proof required for conviction; and (e) failing to request a sentencing hearing "to see if the firearm was possessed, brandished or discharged";

3. Movant's sentence is excessive, in violation of the Eighth Amendment prohibition against cruel and unusual punishment; and his right to appeal was not explained to him;

4. Movant's equal protection rights were violated when his sentence was not subject to the same residual-clause analysis as in *Johnson*, *Dimaya* and other cases.

(Doc. 407 at 5, 6, 7, 9).

### C. <u>Analysis</u>

Based on Movant's Plea Agreement and the transcript of his plea hearing, the undersigned finds that Movant has shown no deficiency in his counsel's performance; and that, even if a deficiency did occur, it was cured by the plea colloquy between Movant and the Court. At the hearing, Movant acknowledged his understanding of the charges against him; the facts the government would need to prove to convict him; and his potential sentences, including a five-year consecutive sentence for the § 924(c) firearm offense. He also acknowledged that he understood the appeal waiver and its effects. As to Movant's other specific claims of ineffective assistance of counsel, there is no indication in the record that Movant could have pleaded guilty to one charge and not the other; Movant has not even suggested what the "key factors for appeal" might be; and there was no need for a hearing on the firearm offense because Movant was arrested while in possession of both drugs and firearms. Indeed, Movant admitted during his arrest, and later acknowledged at his plea hearing, that he possessed multiple firearms in furtherance of his drug trafficking crime. Movant's claims of ineffective assistance of counsel fail.

And Movant's remaining claims fail because he entered into a valid waiver of all appellate claims *except* ineffective assistance of counsel. (*See* Doc. 417 at 7-9).

Finally, Movant's reliance on *Johnson* and *Dimaya* is misplaced, because Movant was convicted of possessing a firearm in furtherance of a *drug trafficking crime*, whereas those two Supreme Court cases involved the meaning of *violent felony* or *crime of violence* when interpreting the residual clause in each of the definitions at issue. The outcome in those cases is therefore not relevant here, where there simply is no residual clause issue. (*See* Doc. 417 at 4-7).

### III.    Certificate Of Appealability

A federal prisoner must obtain a certificate of appealability ("COA") before appealing the denial of a motion to vacate. 28 U.S.C. § 2255(d); 28 U.S.C. § 2253(c)(1)(B). A COA may issue only when the movant makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations omitted). A movant need not "show he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003)).

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Jimenez v. Quarterman*, 555 U.S. 113, 118 n.3 (2009) (internal quotations omitted) (citing *Slack*, 529 U.S. at 484).

Although *Slack* involved an appeal from the denial of a 28 U.S.C. § 2254 petition, the same standard applies here. *See Jones v. United States*, 224 F.3d 1251, 1254 (11th Cir. 2000) (applying *Slack* standard in § 2255 case). Because jurists of reason would not find it debatable, and would agree, that Movant's § 2255 motion is without merit, a certificate of appealability is not warranted here.

### III. Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Movant's § 2255 motion (Doc. 407) be **DENIED** and that he be **DENIED** a COA.

The Clerk is **DIRECTED** to terminate the referral to the Magistrate Judge.

**SO RECOMMENDED** this 13th day of February, 2019.

/s/ J. Clay Fuller
J. Clay Fuller
United States Magistrate Judge

9